6 Offender Consequences are intimately related to the conviction. In fact, they are triggered by it. They are truly severe with the potentiality of indefinite, perhaps lifetime commitment in a prison situation, and many are mandatory, including a number of ones that would have geographic restrictions and community notifications. What you're about to hear is a defense counsel committing heresy. The idea was wrongly decided by the majority. The four conservatives who did the dissent and the concurrence got it right that this is not really, or shouldn't be, a 6th Amendment issue, but a 5th Amendment due process issue. It has to do with voluntariness and knowingness of the plea. Even if we accepted that, that's not the majority decision in Padilla, and our court has not applied Padilla in that manner, and instead has continued to apply a direct v. collateral consequences dichotomy. So how is it that we could do what it is that you want us to do in the face of our binding precedent? And I'll say the Delgado-Ramos case is, I think we kind of start and end there, don't we? The precedent is squarely against me. We can get that out of the way. What the court can do is decide this based upon due process, and that's because the court needs to decide it, and you don't need to overrule 6th Amendment. I'm talking 5th. You don't need to overrule your precedent based upon Padilla. What's wrong, what the Padilla court got right, the majority got right, is that the direct v. collateral dichotomy really doesn't work for knowing and voluntary. And Padilla didn't talk about knowing and voluntary pleas. Padilla was talking about effective assistance of counsel and was saying that that dichotomy doesn't really work when measuring a counsel's performance, as opposed to here where there's a whole different set of circumstances where a court is providing advice to the defendant who's contemplating a guilty plea. And it seems to make sense, and I'm interested in why you think it doesn't, for the court not to be required to discuss every collateral consequence with the defendant to make the plea knowing and voluntary. And every collateral consequence need not be discussed. Certainly things that have very serious impact, that's where you get all nine justices in the Supreme Court agreeing. Padilla needed to be informed. They all agree he needed to be informed. And the possibility of that lifetime imprisonment, that Mr. Holland should have been informed that that is out there. The majority in Padilla, what they got right is it isn't direct v. collateral. It's like informed consent in the medical arena. It's exactly the same thing. It's my orthopedic doctor said get the knee replacement. Okay, that does not directly affect my heart at all. And yet for my informed consent, the problem is that the collateral, the anesthesiologist, anesthesia could kill me if I had a bad heart. So he had to tell me, you need to go and talk to your cardiologist before you go ahead and have this. Now that shows if we were only going on, does it have a direct impact? I could be dead. Obviously, you need to be able to talk about that. And that informed consent informs us here as to what we advise a defendant, I guess, more properly. When you have the court, this is also where I agree with the dissent and the concurrence. You have the, all the court has to do, is responsible to do is say there are collateral consequences. They can be severe. It can include various things like this. And it already does that in the bench book, in the rule 11 colloquies, it does it. You, what you have to do is be able to say, this could happen and you should consult. After Padilla, we defense attorneys did not become immigration specialists and God help us if we'd had to. Most of the time we have to tell our clients, look, it could affect your immigration status. We don't know all that much, but it could. Consult, ask, exactly like check with your cardiologist before you go ahead, because it could have very drastic effects. And that is all the court has to do. And I don't think that they have to try and figure it out in every jurisdiction for every purpose. Okay. I appreciate what you're saying. And the second circuit in the Young's case makes that point. There's a footnote in Young's that says, you know, going forward, it's probably not a bad idea for district courts to advise. However, Young's ultimately is not a good case for you. And it's rejecting the argument you're making. So with what you're asking us to do, it seems to me there are two hurdles. The first is you'd be asking us to create a split with the second circuit, which we can do. Obviously we want to think about it. But second, getting back to Delgado-Ramos, it seems to me that that case, the argument you're making, unfortunately, should have been made to the Delgado-Ramos panel 10 years ago. And they went the other way. So tell me how we get, tell me one, are we creating a split with Young's if we go your way? And then second, how do we get around Delgado-Ramos, which seems to have rejected the argument you're making now? First, this court is not shy to sometimes create a split. And when that split is correct, then it should do it. And that split is correct for the same reason of informed consent. And for where the Supreme Court went with Padilla, which was not on those, that other dichotomy. The Delgado-Ramos, sometimes, as we learn more about what happens in these cases, we realize that maybe we need to revise what we've done before. So you're asking us to go, to call for an embankment in this case then? I would suggest that that might be appropriate for what I'm asking. Well, it seems to me, it seems to me what you're saying is that it's the only way, right? Because if Del, I mean, unless you can distinguish Delgado-Ramos for us, somehow, we're, you know, we're very powerful, the three of us, but we're not that powerful, right? We're kind of stuck with what the precedent is. So if you're, what you're saying is that you can't distinguish Delgado-Ramos net, but we should ask our court to go and bank. I understand the supply here. Now's the time to make it. I don't know. I don't have off the top of my head that argument. Well, why don't you reserve and then maybe it'll come to you. I will reserve. All right. Very well. Good morning, your honors. May it please the court. My name is Jason Crowley. I represent the United States. I think part of the interesting questions that appellant raises would be more general advisement that the defendant here would have to register as a sex offender. If there had been an affirmative misadvisement that you would not have to, or if the court had completely ignored that aspect of it, then we may have had a more square assertion of both the Padilla issue as well as potentially some others here. But in this case, the defendant was affirmatively advised that he would have to register as a sex offender. At no point did he stop and say, what does that mean or object to the imposition of those consequences later on. And the court at no point was really obligated under this court's precedent to advise him of those details or particularly the issue of civil commitment here. Your honors, we ask that the court dismiss this appeal because the issue that the appellant raises was collateral. Therefore, his entry and being bound by the appellate waiver in the plea here is binding on him. No due process error occurred here. Even if the court went beyond that issue, no plain error occurred here. There was no controlling authority on point for the district court. And the most closely analogous precedent here leads to a result which is different from what the defendant is asking the court to do. But you would agree that for us to determine whether the appeal is waived, we actually do have to answer the merits question in this case first. Yes, your honor. If the court were to find that being advised of sex offender consequences is, in fact, a direct consequence of a plea, then the court would need to reach that to practical perspective. What the appellant is asking for here would become kind of wildly cumbersome for the magistrate courts who are doing most of the changes of plea in this matter. So, for example, with the civil commitment issue, the appellant raises the issues of, for example, the defendant's IQ and some certain things that were contained in the psychosexual evaluation that supplements the pre-sentence report. But none of those pieces of information are actually available to the magistrate judges at the time of the change of plea. And so we'd really just be asking them to, I don't know if they would need to speculate if each sex offender could possibly be committed, even though that's a super rare occurrence. Additionally, your honors, there's a So, counsel, one question I had is that having taken a number of pleas in the USA, we had our and benefits. And there was a reason why they were in there because the Ninth Circuit had some case that said, you know, if you don't tell them about food stamps, you can invalidate the plea. How difficult would it be going forward to simply add a couple of words? Like the Second Circuit in Young's recommends saying, you know, I think they put it in terms of magistrate judge, but under Vaughn, the Supreme Court says we look at everything to determine whether a guilty plea is voluntary. You guys could just add a sentence to the plea agreement saying, you know, consequence could include civil commitment, geographic, all the things that they're complaining about didn't happen here. I know the plea agreements are long these days, but you could add another sentence there and just, couldn't you just take care of it going forward that way? Well, your honors, I think the difficulty of doing it that way is just the level of detail that then happens, I think is better reserved for counsel to advise a client. So a plea could include, you may be required to be civilly committed or have geographic restrictions or notification provisions, but that may or may not apply in each defendant's case. It could result in kind of a advisement for some defendants. And unlike, so in the rule 11 calls, we now courts advise defendants who are not citizens of the United States that their plea may result in their deportation or removal. Unlike in that context where we have a uniform kind of national law that's very explicit and has automatic consequences upon conviction, these sex offender consequences vary so significantly from jurisdiction to jurisdiction that just kind of a general advisement may not address the specifics of a particular defendant's case. And that's definitely something that would be much better for them to have a conversation with their attorney with than for the court in rule 11 or a plea call. If there are no other questions. All right. Thank you, counsel. Thank you. This is exactly what I was saying. And where I agree with the minority in Padilla, you don't need to become an expert on those things. And certainly with the differences in sex offender obligations, different jurisdictions, it's well to just simply say you could face commitment, you could face geographic restrictions, you could face community notification. And that is all that needs to be said. And that can be said in one sentence in a rule 11 colloquy. And certainly could be, would be result, was the result of what happened in Padilla. There's, there is just usually one sentence that is given in the rule 11 colloquy about it. And that's all we're asking for here to comply with due process. The problem of misadvisement was addressed in the Supreme Court versus omission. Commission versus omission was addressed in the Supreme Court. And it said that that was a non-starter. As to Del Ramos, this court has at times, and I have, I've argued a case which the court came out with an unpublished opinion, a short unpublished opinion, and it disagreed with what another panel had said. It happens. That could be the start. And, or this panel could ask for en banc to decide this. Because what we are looking at here is the change across America and a number of the lower tribunals. And no major federal court, certainly like this, has yet addressed whether there's a due process issue for not advising of the possibility and then referring to the specialist to say, you know, check it out with a specialist in that area. No major federal court has done that. This court could be first. And I'm done, I believe. Yeah. All right. Thank you very much, counsel. Thank you. Appreciate it. Thank you for your argument in briefing this case. This matter is submitted.
judges: OWENS, BADE, Baker